**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL PARTHENAKIS, | Civil Action No. |
| Plaintiff, | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| RMR MORTGAGE TRUST, THOMAS LORENZINI, BARBARA D. GILMORE, JOHN HARRINGTON, JEFFREY SOMERS, MATT JORDAN, and ADAM PORTNOY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Michael Parthenakis ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by RMR Mortgage Trust ("RMRM" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning RMRM and the Defendants.

**SUMMARY OF THE ACTION**

1.      This is an action brought by Plaintiff against RMRM and the Company's Board of Trustees (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and

20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between RMRM and Tremont Mortgage Trust ("TRMT") (the "Proposed Transaction").

2.      On April 26, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with TRMT.  Pursuant to the terms of the Merger Agreement each TRMT common share will be converted into 0.520 shares of newly issued RMRM common shares (the "Merger Consideration"). RMRM shareholders are expected to own approximately 70% of the combined company.

3.      On June 9, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration Statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against RMRM and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to RMRM shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of RMRM shares.

9.     Defendant RMRM is incorporated under the laws of Maryland and has its principal executive offices located at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458.  The Company's common stock trades on the NASDAQ under the symbol "RMRM."

10.     Defendant Thomas Lorenzini ("Lorenzini") is and has been the President of RMRM at all times during the relevant time period.

11.     Defendant Barbara D. Gilmore ("Gilmore") is and has been an RMRM trustee at all times during the relevant time period.

12.     Defendant John Harrington ("Harrington") is and has been an RMRM trustee at all times during the relevant time period.

13.     Defendant Jeffrey Somers ("Somers") is and has been an RMRM Trustee at all times during the relevant time period.

14.     Defendant Matt Jordan ("Jordan") is and has been an RMRM Trustee at all times during the relevant time period.

15.     Defendant Adam Portnoy ("Portnoy") is and has been an RMRM Trustee at all times during the relevant time period.

16.     Defendants Lorenzini, Gilmore, Harrington, Somers, Jordan, and Portnoy are collectively referred to herein as the "Individual Defendants."

17.     The Individual Defendants, along with Defendant RMRM, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18.     RMRM is a real estate finance company that originates and invests in first mortgage loans secured by middle market and transitional commercial real estate. RMRM is managed by an affiliate of The RMR Group Inc. ("RMR"). Substantially all of RMR's business is conducted by its majority owned subsidiary, The RMR Group LLC, which is an alternative asset management company with $32 billion in assets under management and more than 35 years of institutional experience in buying, selling, financing and operating commercial real estate.

### The Company Announces the Proposed Transaction

19.     On April 26, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> NEWTON, Mass.--(BUSINESS WIRE)--RMR Mortgage Trust (Nasdaq: RMRM) and Tremont Mortgage Trust (Nasdaq: TRMT) today announced that they have entered into a definitive merger agreement pursuant to which TRMT will merge with and into RMRM, with RMRM continuing as the surviving company. The merger is expected to create a more diversified commercial mortgage real estate investment trust, or REIT, focused on middle market transitional bridge loans with assets expected to approach $1 billion when fully invested. The merger is expected to be accretive to distributable earnings in 2022 with the potential to

realize annual expense savings of $1.4 million to $1.6 million, or $0.10 to $0.11 per common share, due to the elimination of certain duplicative public company costs.

*        *        *

**Certain Expected Strategic Transaction Benefits**

- Enhanced scale with fully invested assets expected to approach $1 billion
- Accretive to the distributable earnings of both RMRM and TRMT
- Expanded capital base, float and shareholder liquidity
- Improved access to capital markets with the potential of a reduced cost of capital
- Increased portfolio diversification among investments and asset class exposure
- Greater market visibility to drive increased transaction volume
- Seamless integration, as existing senior management team remains in place

Under the terms of the merger agreement, each TRMT common share will be converted into 0.520 of one newly issued RMRM common share. Based on the closing prices of RMRM's and TRMT's common shares on Friday, April 23, 2021, the implied offer price is approximately $6.55 per TRMT common share, which represents a premium of 6% and 9% to the closing price and the volume weighted average price, respectively, for the 30 trading days ending on April 23, 2021. Upon the closing of the merger, RMRM shareholders are expected to own approximately 70% of the combined company's outstanding common shares, while TRMT shareholders are expected to own approximately 30% of the combined company's outstanding common shares.

Based on the closing price of RMRM's common shares on April 23, 2021, the equity market capitalization of the combined company would be approximately $180 million. Tremont Realty Advisors LLC, the manager of RMRM and TRMT, or the Manager, will continue to manage the combined company and has waived any termination fee that would otherwise be payable by TRMT as a result of the merger.

On a pro forma basis as of today, the combined company will have a loan portfolio consisting of the following characteristics:

- 22 first mortgage loans with aggregate loan commitments of $519 million;
- Average funded loan size of $21 million;
- Weighted average maximum maturity, which assumes all borrower extension options have been exercised, of 3.2 years; and
- Weighted average interest rate of LIBOR plus 3.91% and a weighted average loan-to-value of 66%.

The merger and other transactions contemplated by the merger agreement and the terms thereof were evaluated, negotiated and recommended, as applicable to each of RMRM's and TRMT's board of trustees by special committees of each of RMRM's and TRMT's board of trustees, respectively, each comprised solely of RMRM's and TRMT's disinterested, independent trustees, respectively, and were separately unanimously approved and adopted by RMRM's and TRMT's independent trustees and by RMRM's and TRMT's board of trustees, with independent trustees unanimously approving the merger and other transactions contemplated by the merger agreement.

The merger is expected to close during the third quarter of 2021, subject to the requisite approvals by RMRM and TRMT shareholders and other customary closing conditions. RMRM's greater than 5% shareholder has agreed to vote in favor of the issuance of common shares in the merger at RMRM's special meeting of shareholders. TRMT's greater than 5% shareholder has agreed to vote in favor of the merger and other transactions contemplated by the merger agreement at TRMT's special meeting of shareholders.

UBS Investment Bank is acting as exclusive financial adviser to the RMRM special committee and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to RMRM (acting through the special committee). Citigroup Global Markets Inc. is acting as exclusive financial adviser to the TRMT special committee and Sullivan & Worcester LLP is acting as legal adviser to TRMT (acting through the special committee).

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

20.    On June 9, 2021, the Company authorized the filing of the Registration Statement with the SEC.  The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

21.    Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Financial Projections**

22.     The Registration Statement contains projections prepared by the Company's and TRMT's management concerning the Proposed Transaction, but fails to provide material information concerning such.

23.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

24.     In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

25.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

26.     The Registration Statement contains the financial analyses and opinion of Citigroup Global Markets, Inc. ("Citi") and UBS Securities LLC ("UBS") concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     With respect to Citi's *Dividend Discount Analysis* for TRMT, the Registration Statement fails to disclose: (i) TRMT's terminal values; (ii) the inputs and assumptions underlying Citi's use of the range of BVPS multiples of 0.90x to 1.10x; and (iii) the inputs and assumptions underlying Citi's use of the discount rate range of 22.2% to 30.0%.

28.     With respect to Citi's *Dividend Discount Analysis* for RMRM, the Registration Statement fails to disclose: (i) RMRM's terminal values; (ii) the inputs and assumptions underlying Citi's use of the range of BVPS multiples of 0.90x to 1.10x; and (iii) the inputs and assumptions underlying Citi's use of the discount rates range of 17.7% to 25.4%.

29.     With respect to Citi's *Selected Public Companies Analysis* for TRMT, the Registration Statement fails to disclose: (i) the individual multiples and metrics for each company in the analysis; and (ii) the inputs and assumptions underlying Citi's utilized selected multiples ranges in the analysis.

30.     With respect to Citi's *Selected Public Companies Analysis* for RMRM, the Registration Statement fails to disclose: (i) the individual multiples and metrics for each company in the analysis; and (ii) the inputs and assumptions underlying Citi's utilized selected multiples ranges in the analysis..

31.     With respect to Citi's *Selected Precedent Transaction Analysis*, the Registration Statement fails to disclose the closing date and value for each of the selected transactions closed.

32.     With respect to UBS's *RMRM Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

33.     With respect to UBS's *TRMT Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

34.     With respect to UBS's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

35.     With respect to UBS's *Leveraged Discount Cash Flow Analysis* for RMRM, the Registration Statement fails to disclose: (i) the terminal values for RMRM; and (ii) the inputs and assumptions underlying UBS's use of the discount rate range of 15.0% to 19.0%.

36.     With respect to UBS's *Leveraged Discount Cash Flow Analysis* for TRMT, the Registration Statement fails to disclose: (i) the terminal values for TRMT; and (ii) the inputs and assumptions underlying UBS's use of the discount rate range of 15.0% to 19.0%.

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support

of its fairness opinion.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding the Background of the Transaction

38.     The Registration Statement fails to provide material information concerning the sales process conducted by the Company and the events leading up to the Proposed Transaction.

39.     The Registration Statement fails to disclose sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

40.     Lastly, the Registration Statement fails to disclose sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, as well as if any agreements contained "don't-ask, don't-waive" or standstill provisions.

41.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or trustees, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

47.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

48.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's trustees. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

50.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

51.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of RMRM within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or trustees of RMRM, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56.     In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 1, 2021                                       Respectfully submitted,

                                                          By: */s/ Joshua M. Lifshitz*
                                                          Joshua M. Lifshitz
                                                          Email: jml@jlclasslaw.com
                                                          **LIFSHITZ LAW FIRM, P.C.**
                                                          1190 Broadway,
                                                          Hewlett, New York 11557
                                                          Telephone: (516) 493-9780
                                                          Facsimile: (516) 280-7376

                                                          *Attorneys for Plaintiff*